IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARMANDO GONZALEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 09-017-SLR |
| | ) |
| CITIGROUP, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 30th day of July, 2009, having reviewed the motion to dismiss filed by defendant Citigroup Global Market Inc. ("defendant"), and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 10) is granted, for the reasons set forth below.

1. **Background.**[1] Plaintiff Armando Gonzalez ("plaintiff") initiated this suit pro se on January 6, 2009, alleging that defendant discriminated and retaliated against him on the basis of his race and ethnicity in violation of 42 U.S.C. §§ 2000e et seq. ("Title VII").

---

[1] A 12(b)(1) motion to dismiss presents either a facial or a factual attack on the court's jurisdiction. See Cephalon, Inc. v. Watson Pharms., Inc., Civ. No. 08-330-SLR, 2009 WL 1838352, at *3 (D. Del. Apr. 3, 2009). Defendant does not indicate in the pending motion which attack it levies against the court's jurisdiction. However, the court views the instant challenge as a factual attack. As such, the court need not confine its consideration to the allegations in the complaint nor accept those allegations as true. See id. (citing Mortensen v. First Fed. Sav. & Loan, 549 F.2d 884, 891 (3d Cir. 1977)). Instead, the court may consider evidence outside the pleadings to resolve any factual issues bearing on jurisdiction. See id. (citations omitted). Therefore, the facts as presented in this section are garnered from the complaint, briefs from both parties, and other accompanying documents.

(D.I. 2) Plaintiff, a former employee at defendant's New Castle, Delaware office, alleges that, between October and December 2006, another of defendant's employees treated plaintiff in a degrading and disparate manner, including using nicknames for plaintiff, inquiring into plaintiff's personal life, treating other coworkers more favorably, assigning more work to plaintiff, and harassing and yelling at plaintiff. (D.I. 10, ex. A) Plaintiff filed a charge of racial and ethnic discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DDOL") on April 10, 2007. (*Id.*, D.I. 11 at 3; D.I. 13 at 5) Defendant terminated plaintiff on June 16, 2007, shortly after receiving a copy of the discrimination complaint. (D.I. 11 at 3; D.I. 13 at 5; *id.*, ex. C) On June 18, 2007, plaintiff filed another charge with EEOC and DDOL, this time alleging retaliatory discrimination. (D.I. 11 at 3 n.3; D.I. 13 at 5) On October 7, 2008, EEOC issued a notice of right to sue letter with respect to plaintiff's claims of discrimination based on race and ethnicity,[2] after which plaintiff filed this action on January 6, 2009. (D.I. 2)

    2. Defendant filed this 12(b)(1) motion on May 5, 2009, asserting that the court lacks subject matter jurisdiction over plaintiff's action pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). It is undisputed that plaintiff agreed to arbitrate all

---

[2]Defendant asserts that EEOC has not yet issued a notice of right to sue letter with respect to plaintiff's retaliation claim. (D.I. 11 at 3 n.3) Plaintiff attached to its complaint a notice of right to sue letter that authorizes plaintiff to sue only on racial and ethnic discrimination. (D.I. 2) Plaintiff has not produced a notice of right to sue letter pertaining to his retaliation claim. Because plaintiff failed to exhaust his administrative remedies with respect to the retaliation claim, the court lacks jurisdiction over this specific claim. See *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976) ("The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue." (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973))).

employment disputes with defendant by signing and acknowledging receipt of defendant's Employee Handbook ("Handbook") and Principles of Employment ("Principles") (collectively, "arbitration agreements"). (D.I. 10, ex. C; D.I. 11 at 4; D.I. 13; D.I. 14 at 1) The arbitration agreements provide, in pertinent part, that defendant's employees must submit employment-related disputes, including statutory, contractual, or common law claims, to binding arbitration.[3] (D.I. 10, exs. B, C; D.I. 11 at 4-6) Plaintiff answers by averring that the arbitration agreements are unconscionable and, thus, unenforceable. (D.I. 13 at 11-13) To substantiate this averment, plaintiff claims that the arbitration agreements were presented to him during a "fast and candid orientation session" in which he was told to sign the documents as a mere formality in order to secure a spot on defendant's payroll. (*Id.* at 10) Plaintiff also points to a clause in the Handbook whereby defendant reserves the right to amend or discontinue its arbitration policy. (*Id.* at 13; D.I. 10, ex. B at 49)

3. **Standard of Review.** If an arbitration clause is valid and enforceable, a court does not have jurisdiction over the underlying dispute and must refer the case to an arbitrator. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179-80 (3d Cir. 1999) ("If . . . a court deems a controverted arbitration clause a valid and enforceable agreement, it must refer questions regarding the enforceability of the terms of the underlying contract to an arbitrator, pursuant to section four of the FAA."); *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997) ("In conducting this inquiry the

---

[3]The arbitration agreements explicitly reference Title VII claims as an example of the statutory claims subject to defendant's arbitration policy. (D.I. 10, exs. B, C; D.I. 11 at 5-6)

district court decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid."). The FAA requires the court to look to the principles of contract law to determine if arbitration clauses are valid and enforceable. See 9 U.S.C. § 2.

4. Under Delaware law, a contract is unconscionable if there is "an absence of meaningful choice and [if the] contract terms [are] unreasonably favorable to one of the parties."[4] *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978). Moreover,

> [s]uperior bargaining power alone without the element of unreasonableness does not permit a finding of unconscionability or unfairness. The traditional test is this: a contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other."

*Id.* (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 450 (D.C. Cir. 1965)); see also *Lloyd v. MBNA Am. Bank, N.A.*, Civ. No. 00-109-SLR, 2001 WL 194300, at *4 (D. Del. Feb. 22, 2001) ("More than a disparity in bargaining power is needed to show that an arbitration agreement is unconscionable or unenforceable." (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991))).

5. **Discussion**. Based on the above law, plaintiff fails to make a sufficient showing that the arbitration agreements are unconscionable. Plaintiff presents insufficient evidence to prove an absence of meaningful choice and unreasonably favorable terms in the arbitration agreements. The possibility that defendant allegedly

---

[4]This definition encompasses two elements, procedural unconscionability (which contemplates the absence of meaningful choice) and substantive unconscionability (which contemplates unreasonably favorable terms). See *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, Civ. No. C.A. 19209, 2002 WL 1558382, at *11 n.46 (Del. Ch. July 9, 2002).

tempted plaintiff with a spot on the payroll to goad him into signing the arbitration agreements does not, standing alone, prove unconscionability. Moreover, it cannot be said that the substance of the arbitration agreements, common to many other enforceable arbitration contracts, shocks the conscience or that an honest and sensible man would not accept them.[5] See *Tulowitzki*, 396 A.2d at 960 (quoting *Walker-Thomas Furniture Co.*, 350 F.2d at 450). Contrary to plaintiff's argument, by acquiescing to the arbitration agreements, plaintiff did not "forego the substantive rights afforded by [Title VII]; rather [he] only submit[ted] to their resolution in an arbitral, rather than a judicial forum." *Gilmer*, 500 U.S. at 26. As stated in the Handbook, "[t]he arbitrator shall have the authority to award compensatory damages and injunctive relief to the extent permitted by applicable law . . . . [and] shall have the authority to award punitive or exemplary damages or attorneys' fees as otherwise available in court." (D.I. 10, ex. B at 48)

6. **Conclusion**. Pursuant to the FAA, 9 U.S.C. § 2, because the arbitration agreements signed by plaintiff are valid and enforceable, plaintiff's claims must be resolved by arbitration. As such, the court lacks jurisdiction over this suit. Defendant's

---

[5]In resolving the question of arbitrability in the matter at bar, the court notes the direction of the Supreme Court, namely, that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

5

motion to dismiss (D.I. 10), therefore, is granted.[6]

_____
United States District Judge

---

[6]The court, in its sound discretion, denies defendant's request for costs against this pro se plaintiff.